RECEIVED CASHIER

CLERK'S OFFICE USDC PR

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

In re:

***Ex Parte*** **Application of Dr. Sanjeev Kaila for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding Against Michelle Ann Baker**

Case No. 26-mc-210 (scc)

2026 JUN 3 AM10:32

RECEIPT # 123951
AMOUNT: $52.00

JUN 03 2026

CASHIER'S SIGNATURE

## APPLICATION AND MEMORANDUM OF LAW PURSUANT TO 28 U.S.C. § 1782
## FOR AN ORDER TO CONDUCT DISCOVERY
## FOR AID AND USE IN FOREIGN PROCEEDING

Applicant Dr. Sanjeev Kaila seeks an Order pursuant to 28 U.S.C. § 1782 authorizing discovery for use in a Hague Convention proceeding on the Civil Aspects of International Child Abduction pending before the Ontario Superior Court of Justice, Toronto, Canada, in which he seeks the return of his minor daughter, Seeta Kaila, who was wrongfully removed from Puerto Rico by Respondent Michelle Ann Baker.

10315014

## APPLICATION FOR 28 U.S.C. § 1782 ORDER TO CONDUCT DISCOVERY FOR AID AND USE IN A FOREIGN PROCEEDING

Applicant Dr. Sanjeev Kaila ("Dr. Kaila" or "Applicant") respectfully submits this Application pursuant to 28 U.S.C. § 1782 for an Order authorizing discovery in this District for use in *Kaila v. Baker*, Court File No. FS-26-00001829-0000, pending before the Ontario Superior Court of Justice, Toronto, Canada. In that proceeding, Dr. Kaila seeks the return of his minor daughter, Seeta Kaila, under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"). In support of this Application, Dr. Kaila states as follows:

Dr. Kaila is the father of Seeta Kaila, a fifteen-year-old child whose habitual residence is Puerto Rico, where she lived with Dr. Kaila and Michelle Ann Baker ("Baker") as a family unit. Dr. Kaila has been a devoted and active co-parent throughout Seeta's life. On March 25, 2026, in flagrant defiance of three separate court orders, Baker abducted Seeta Kaila from Puerto Rico and took her to Canada. The violated orders are: (i) the Guaynabo Municipal Court's February 24, 2026 Amended *Ex Parte* Protection Order, which expressly prohibited Baker from hiding or removing Seeta Kaila from Puerto Rico; (ii) the San Juan Superior Court's March 25, 2026 Order, which prohibited both parents from removing Seeta Kaila from Puerto Rico without written court authorization; and (iii) the San Juan Superior Court's April 22, 2026 Amended Order, which directed Baker to deliver Seeta Kaila to Dr. Kaila's Canadian counsel within 72 hours—an order Baker has expressly refused to obey.

Dr. Kaila commenced proceedings under the Hague Convention before the Ontario Superior Court of Justice seeking the immediate return of Seeta Kaila to Puerto Rico. A hearing in that matter will require the presentation of evidence to the Canadian Court, and the critical evidence necessary to support that proceeding is in Puerto Rico, where the relevant witnesses reside.

10315014

Dr. Kaila seeks leave to serve subpoenas upon four individuals who reside in this District and possess information essential to the Canadian proceeding that cannot be obtained through any other means. They are: (1) **Colin S. Bengall** ("Bengall"), believed to be Baker's boyfriend, who harbored Baker and Seeta Kaila at his Guaynabo residence during the custody proceedings, demanded $75,000,000 from Dr. Kaila in exchange for deploying his claimed "influence" over Baker, and who admitted that Baker fled Puerto Rico with Seeta Kaila specifically because a court had ordered her not to do so; (2) **Jeanne Carmichael Dent** ("Dent"), a Florida-licensed psychotherapist and close associate of Baker who submitted a purported expert opinion letter to the Guaynabo Municipal Court on Baker's behalf based entirely on Baker's self-serving statements, and who is believed to possess communications bearing on Baker's scheme to remove Seeta Kaila from Puerto Rico; (3) **Jorge Hernández** ("Hernández"), President of the Homeowners Association of Urbanización Beverly Hills in Guaynabo, Puerto Rico—the same community where Bengall resides—who personally observed Baker and Seeta Kaila living at Bengall's home, maintains security camera recordings documenting Baker's movements, and to whom Bengall directly admitted on March 25, 2026 that Baker had departed Puerto Rico with Seeta Kaila because of the court's order: and (4) Laura Ramos, who is the Interim director of the Tasis School in Dorado, who has information relating to Seeta's efforts to attend school after she was abducted as well as potential information relating to Michelle Ann Baker's improper registration of Seeta in a Canadian high school after her abduction and false allegations of abuse

These four witnesses and their records—including documents, emails, phone records, WhatsApp communications, text messages, bank records, and other evidence—go to the heart of the Canadian proceeding and are indispensable to proving Baker's wrongful removal and continued retention of Seeta Kaila. Section 1782 is to be given "a liberal interpretation" in

2

furtherance of its "twin aims" of "providing efficient means of assistance to participants in international litigation" and "encouraging foreign countries by example to provide similar means of assistance to our courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004). The discovery sought falls squarely within that mandate.

The Applicant seeks an Order pursuant to 28 U.S.C. § 1782 authorizing service of document and deposition subpoenas upon Bengall, Dent, Hernández and Ramos for use in the Canadian proceeding. The subpoenas will be issued pursuant to Fed. R. Civ. P. 45 in the form attached hereto as **Exhibits D, E, F** and **G**.[1]

This Application seeks only authorization of the requested discovery. The Applicant requests that the Court grant this Application without a hearing, which is standard procedure for Section 1782 applications. The proposed discovery targets will retain the ability to respond and object pursuant to Rule 45(d) and applicable discovery rules. The Applicant incorporates the Memorandum of Law below and refers the Court to the Declarations of Dr. Kaila (**Exhibit A**), Katherine Prowse, (**Exhibit B**), María de Lourdes Guzmán, Esq. (**Exhibit C**), which includes as Exhibit 6 thereto the Declaration of Robert Epstein, Esq.

---

[1] The Applicant anticipates populating the compliance dates in the attached Document and Deposition Subpoenas, Exhibits D, E, F, and G following the entry of an order granting the relief requested herein.

10315014

## MEMORANDUM OF LAW IN SUPPORT

This Court has subject matter jurisdiction over this Application pursuant to 28 U.S.C. § 1782. Venue in this District is proper pursuant to 28 U.S.C. § 1782 because discovery is being sought from individuals who reside within this District.

### I.      Preliminary Statement

Summary of Facts Supporting Applicant's Claims in the Canada Proceeding

The following facts are drawn from the sworn Declarations of Dr. Sanjeev Kaila, Katherine Prowse, Maria de L. Guzmán, Esq., and Robert Epstein, Esq., submitted herewith.

Dr. Sanjeev Kaila is the father of Seeta Kaila, a fifteen-year-old child whose habitual residence is Puerto Rico. *See* Kaila Decl. ¶ 10. Since birth, Seeta has resided with Dr. Kaila and Baker as a family unit, and Dr. Kaila has been a devoted and active co-parent to his daughter.

Dr. Kaila met Baker in 1999 when he was a medical resident in Canada. Baker began working for Dr. Kaila in his medical practice and businesses. After Seeta was born, the family moved to Atlanta, Georgia, in 2012, where Dr. Kaila continued his practice and Baker continued to work for him. *See* Kaila Decl. ¶ 2. In 2020, Dr. Kaila moved to Puerto Rico, and Baker and Seeta joined him in 2023, where they have resided together since. *See* Kaila Decl. ¶¶ 3–4. Whether in Canada, Georgia, or Puerto Rico, Dr. Kaila and Baker have co-parented Seeta together. *See* Kaila Decl. ¶ 10.

Dr. Kaila is the sole owner of SAK Management, LLC ("SAKM") and Center for Surgical Arts, Inc. ("CSA"). *See* Kaila Decl. ¶ 5. SAKM maintains a business checking account at Truist Bank in Atlanta, Georgia, and CSA maintains a business checking account at Coastal States Bank in Hilton Head, South Carolina. *See* Kaila Decl. ¶¶ 6–7.

4

10315014

After Baker obtained a Temporary Restraining Order ("TRO") in the Courts of Puerto Rico and Dr. Kaila learned she was living with Bengall—who had sought $75,000,000 from Dr. Kaila for himself and Baker—Dr. Kaila examined his companies' bank records. *See* Kaila Decl. ¶ 8. He discovered that Baker had made unauthorized withdrawals by forging his signature and making unauthorized transfers. *See* Kaila Decl. ¶ 9. He also discovered that Baker had forged his signature on a document purporting to give her full custody of Seeta. *Id.*

To the best of Dr. Kaila's recollection, he never authorized a "signature stamp" bearing his signature. *See* Kaila Decl. ¶ 11. In reviewing files at the Puerto Rico residence, Dr. Kaila discovered that Baker had forged or otherwise used an unauthorized signature stamp on a document dated January 23, 2025, purporting to give Baker full custody of Seeta. *See* Kaila Decl. ¶ 12. Dr. Kaila never signed this document, never authorized anyone to use a signature stamp on it, and never authorized Baker to assume sole legal or physical custody of Seeta. *See* Kaila Decl. ¶ 13.

Dr. Kaila also discovered that Baker forged or used an unauthorized signature stamp on SAKM's Truist Bank business account throughout 2024 and 2025 to issue checks to herself for "reimbursement." *See* Kaila Decl. ¶ 14. Two such checks, in the amounts of $5,894.75 and $1,209.80, are attached to the Kaila Declaration. *See* Kaila Decl. ¶ 15. Dr. Kaila did not sign these checks or authorize use of his signature. *Id.*

Dr. Kaila similarly discovered that Baker had obtained a credit/debit card on CSA's business account without his knowledge and made unauthorized transfers from CSA's business account for apparent personal expenses. *See* Kaila Decl. ¶ 16. Among the unauthorized transfers identified are: an $8,069.96 transfer for a Barclay credit card payment on January 31, 2023; a $4,010.71 transfer for a Citi Card payment on April 28, 2023; and a $5,070.23 transfer for a Citi

5

10315014

Card payment on November 30, 2023. These are just examples of unauthorized transfers. *See* Kaila Decl. ¶¶ 17-21. To date, Dr. Kaila has identified approximately $22,000 in unauthorized transfers from CSA's business account. *Id.*

Baker's forgeries and unauthorized transfers were discovered after the TRO was served but before the final hearing. This deception, as well as the extortion attempt, was revealed prior to the final hearing before the Guaynabo Municipal Court and may have motivated Baker's decision to flee Puerto Rico in violation of the San Juan Superior Court's order. *See* Kaila Decl. ¶ 23.

On February 8, 2026, Baker obtained an *ex parte* TRO against Dr. Kaila under Puerto Rico's Act 54 (Law for the Prevention and Intervention of Domestic Violence). The Guaynabo Municipal Court ordered Dr. Kaila to vacate the family residence on Calle Porticos Real in Guaynabo, PR so that Baker could reside there with Seeta. *See* Guzmán Decl. ¶ 11.

On or about February 18, 2026, prior to the first post-TRO hearing, Bengall had a discussion with Dr. Kaila's attorney, Robert Epstein, Esq., in which Bengall admitted that Baker and Seeta were living with him and stated that he had "influence over Michelle" and "could mediate and fix the situation." Bengall then demanded that Dr. Kaila pay $50,000,000 for himself and Baker, and $25,000,000 for Seeta, to make "all the problems" of this dispute "go away." *See* Epstein Decl. Mr. Epstein attested that Bengall's statements appeared to be a clear demand for substantial monetary payment in exchange for resolving or influencing the dispute. *Id.*

Dr. Kaila appeared before the Guaynabo Municipal Court on February 24, 2026 for the final hearing, but the Court adjourned the hearing until March 17, 2026 to enable Baker to obtain counsel. Critically, the Court modified the TRO to expressly prohibit Baker from hiding or removing Seeta from Puerto Rico. *See* Guzmán Decl. (attaching the Court's February 24, 2026 Order with English translation).

10315014

Despite the TRO ordering Dr. Kaila to vacate the family home for Baker's benefit, Baker did not reside there. Instead, Dr. Kaila learned that Baker and Seeta were residing at Bengall's home at Calle Monte Cristo, No. 6, Urbanización Beverly Hills, Guaynabo, PR 00926. *See* Kaila Decl. ¶ 24; Guzmán Decl. ¶¶ 11–12.

While preparing for the final hearing on Baker's Act 54 petition, Dr. Kaila's Puerto Rico counsel, María de Lourdes Guzmán, Esq., obtained several pieces of evidence now passed to Canadian counsel for use in the Hague Convention proceeding. *See* Guzmán Decl. ¶ 10. On March 25, 2026, Hernández visited Bengall's residence at Dr. Kaila's request to check on Seeta's status. Bengall told Hernández that Baker was not there and that she had left Puerto Rico with Seeta after learning that the San Juan Superior Court had issued the order prohibiting her from doing so. *See* Kaila Decl. ¶ 26; Guzmán Decl. ¶ 15. Baker's lawyer also produced a letter from Jeanne Carmichael Dent, a Florida-licensed psychotherapist who resides in Puerto Rico. Although presented as a letter from a "concerned friend," the letter purports to offer an expert opinion regarding the psychological status of Dr. Kaila and Baker, based entirely on Baker's self-serving statements. *See* Guzmán Decl. ¶ 16. Dent is believed to reside at 1 Harbor Lights Drive, No. D1, Humacao, PR 00791.

On March 17, 2026, the Guaynabo Municipal Court adjourned the final hearing to March 24, 2026. At the final Act 54 hearing, on March 24, 2026, the Court received evidence from both parties, made findings of fact that contradicted Baker's allegations, and concluded "that the elements necessary to issue a protection order under Law No. 54 do not exist," thereby denying Baker's domestic violence petition. *See* Guzmán Decl. (attaching the Court's March 24, 2026, Order with English translation).

7

10315014

The day after the Court denied Baker's petition, Dr. Kaila obtained an order from the San Juan Superior Court prohibiting both parents from removing Seeta from Puerto Rico without written court authorization. *See* Guzmán Decl. (attaching the Court's March 25, 2026, Order with English translation).

At approximately 5:55 p.m. on March 25, 2026—the very same day the San Juan Superior Court issued its order—Baker and Seeta boarded United Airlines Flight 2036 in San Juan heading to Newark Liberty Airport, in direct violation of the Court's order. *See* Guzmán Decl. (attaching boarding passes).

Baker has violated three separate Puerto Rico court orders: (i) the Guaynabo Municipal Court's February 24, 2026 Amended Ex Parte Protection Order, expressly prohibiting Baker from hiding or removing Seeta from Puerto Rico; (ii) the San Juan Superior Court's March 25, 2026 Order, prohibiting both parents from removing Seeta from Puerto Rico without written court authorization; and (iii) the San Juan Superior Court's April 22, 2026 Amended Order, directing Baker to deliver Seeta to Dr. Kaila's Canadian counsel, Darrell Waisberg, within 72 hours—an order Baker has expressly refused to obey.

On March 25, 2026, Baker abducted Seeta from Puerto Rico and took her to Canada in defiance of these orders.

On March 28, 2026, Dr. Kaila filed a Hague Convention Application with the U.S. Department of State. *See* Prowse Decl.

On or about April 9, 2026, the Central Authority for Ontario, Canada informed Baker that it had received Dr. Kaila's Hague Convention Application for Seeta's return and inquired whether Baker would voluntarily return Seeta to Puerto Rico. *See id.*

8

10315014

On or about April 10, 2026, the Central Authority informed the Ontario Superior Court of Justice that Dr. Kaila's Hague Convention Application was being processed and that no Ontario court should decide upon the merits of custody. *See* Prowse Decl. ¶ 5.

On April 13, 2026, in support of his Hague Convention application, Dr. Kaila applied to the Ontario Superior Court of Justice for an order seizing the passports of Seeta and Baker. *See* Prowse Decl. ¶ 7.

On April 15, 2026, Justice Colin P. Stevenson of the Ontario Superior Court of Justice issued an Endorsement and Order directing Baker to surrender her and Seeta's passports "forthwith" to Waisberg & Associates. *See* Prowse Decl. ¶ 8.

Also on April 15, 2026, Waisberg & Associates sent a letter to Baker, attaching Justice Stevenson's Endorsement and Order, requesting voluntary compliance but indicating that police enforcement would be sought absent compliance. *See id.* ¶ 9.

Waisberg & Associates received no response from Baker. *See id.* ¶ 10.

On April 19, 2026, at approximately 12:53 a.m., Waisberg & Associates was advised by Detective Constable Brian Hewitt of the New London Police that he served Baker with Justice Stevenson's Order at 11:30 p.m. on April 18, 2026. Baker stated that her and Seeta's passports were in a bank safety deposit box. *See id.* ¶ 11.

On April 20, 2026, Waisberg & Associates was contacted by Farrah Hudani, a Toronto lawyer retained to represent Baker. Waisberg & Associates immediately sent her a letter demanding immediate compliance with Justice Stevenson's April 15, 2026, Order. *See id.* ¶ 12.

Attorney Hudani subsequently delivered Baker's and Seeta's passports to Waisberg & Associates. *See id.* ¶ 13.

9

10315014

On April 22, 2026, Waisberg & Associates sent Attorney Hudani a copy of the San Juan Superior Court's April 22, 2026, Amended Order directing Baker to surrender Seeta at their office within 72 hours. *See* Prowse Decl. ¶ 14.

On April 23, 2026, Waisberg & Associates received a reply from Attorney Hudani indicating that Baker would not comply with the San Juan Superior Court Order and would contest the Hague Convention proceeding. *See id.* ¶ 15.

On April 30, 2026, Dr. Kaila filed a formal Hague Convention Application with the Ontario Superior Court of Justice for an order commanding Seeta's return to Puerto Rico. *Kaila v. Baker*, Court File No. FS-26-00001829-0000.

Seeta attended the Tasis School in Dorado. In April 2026, after her abduction, Seeta contacted Laura Ramos, the Interim Director of the Upper School at the Tasis School, inquiring about continuing to attend school remotely. *See,* Kaila decl., at ¶¶ 24-25. It was also discovered that Seeta had logged into a remote-learning class after her abduction. *Id.*, at ¶ 26. It is believed that Laura Ramos and the Tasis School have information relating to contacts, directly and/or indirectly, from Michelle Ann Baker relating to Seeta's improper registration in a Canadian high school after her abduction and possibly false allegations of abuse by Dr. Sanjeev Kaila. *Id.* at ¶¶ 28-29. Laura Ramos and the Tasis School have indicated that they will not voluntarily cooperate with Dr. Kaila. *Id.*, at ¶ 27.

A hearing in this matter will require the presentation of evidence to the Canadian Court, and critical evidence is located in Puerto Rico.

Four individuals who reside in this District possess information essential to the Canadian proceeding that cannot be obtained elsewhere: (1) **Bengall**, who harbored Baker and Seeta at his Guaynabo residence, demanded $75,000,000 from Dr. Kaila, and admitted that Baker fled Puerto

10

10315014

Rico with Seeta because of the court's order; (2) Dent, a Florida-licensed psychotherapist and close associate of Baker who submitted a purported expert letter to the Guaynabo Municipal Court based on Baker's self-serving statements and who is believed to possess communications bearing on Baker's plans to remove Seeta from Puerto Rico; (3) **Hernández**, President of the Homeowners Association of Urbanización Beverly Hills in Guaynabo, Puerto Rico, who personally witnessed Baker and Seeta residing at Bengall's home, possesses security camera recordings documenting Baker's movements, and received Bengall's direct admission on March 25, 2026 that Baker had fled because of the court's order; and (4) **Ramos**, who is the Interim director of the Tasis School in Dorado, who has information relating to Seeta's efforts to attend school after she was abducted as well as potential information relating to Michelle Ann Baker's improper registration of Seeta in a Canadian high school after her abduction and false allegations of abuse.

Hernández, as President of the Beverly Hills Homeowner's Association, believed Baker and Seeta were residing at Bengall's home after the TRO was issued. This belief was based upon observations conveyed by his workers and video surveillance of the entrance to Urbanización Beverly Hills, which showed Baker leaving the development early each school day morning. Dr. Kaila viewed this surveillance footage. On March 25, 2026, after the San Juan Superior Court issued its order, Hernández visited Bengall's residence at Dr. Kaila's request to check on Seeta's status. Bengall told Hernández that Baker was not there and that she had left Puerto Rico with Seeta after learning of the court's order.

Dr. Kaila knows that Hernández resides at Calle Tortuga 47, Urbanización Beverly Hills, Guaynabo, PR 00926.

Bengall, Dent, and Hernández each possess direct, firsthand knowledge of Baker's conduct, living arrangements, and flight from Puerto Rico. Ramos has direct and firsthand

11

10315014

knowledge of Seeta's efforts to remain in school after her abduction as well as information on Michelle Ann Baker's improper registration of Seeta in a Canadian high school after her abduction and information of false allegations of abuse. Their testimony and evidence—including documents, emails, phone records, WhatsApp communications, text messages, bank records, and other materials—is essential to establishing Baker's wrongful removal and retention of Seeta in violation of three Puerto Rico court orders. Section 1782 is to be given "a liberal interpretation" to fulfill its "twin aims" of "providing efficient means of assistance to participants in international litigation" and "encouraging foreign countries by example to provide similar means of assistance to our courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004). The evidence sought falls squarely within this mandate, as these witnesses and their records bear directly on the central issues before the Canadian tribunal: whether Baker wrongfully removed Seeta from her habitual residence in Puerto Rico in deliberate violation of three court orders, and the motives underlying that removal.

## II.       Applicable Law

28 U.S.C. § 1782 concerns assistance to foreign and international tribunals and to litigants before such tribunals. It provides, in relevant part, the following:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise,

12

10315014

the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782. As the text makes plain, four statutory requirements must be met before a court can authorize discovery under Section 1782: (1) "the person from whom discovery is sought resides or is found in the district where the court sits"; (2) "the request seeks evidence . . . for use in a proceeding in a foreign or international tribunal"; (3) "the request is made by a foreign or international tribunal or by any interested person"; and (4) "the material sought is not protected by any legally applicable privilege." *In re Schlich*, 893 F.3d 40, 46 (1st Cir. 2018). *See also In re Tovmasyan*, 557 F. Supp. 3d 348, 352–54 (D.P.R. 2021).

In addition to these statutory requirements, the Supreme Court has identified four discretionary factors: (a) whether the person from whom discovery is sought is a participant in the foreign proceeding; (b) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign government or court to U.S. federal court assistance; (c) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (d) whether the requests are unduly intrusive or burdensome. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). These factors do not create a "burden" for either party but are "considerations to guide" the court's discretion. *In re Valitus, Ltd.*, 2020 WL 6395591, at *5 (D. Mass. 2020) (quoting *In Re Schlich*, 893 F.3d at 50).

A court's discretion to permit discovery when all Section 1782 requirements are met "is not boundless." *In Re Schlich*, 893 F.3d at 46. Courts "must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient assistance to participants in international

13

10315014

litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *Id.* at 46-47.

"[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte." *In re Fagan*, 2019 WL 2267063, at *2 (D. Mass. 2019) (quoting *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012)). Respondents' due process rights are protected because they can challenge the discovery through a motion to quash. *Id.*; *see also Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 268 (D. Mass. 2010).*Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*, 2015 WL 349220, at *8 (S.D.N.Y. 2015) ("Discovery requests under § 1782 are "customarily received and appropriate action taken with respect thereto ex parte"); *Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 268 (D. Mass. 2010) (allowing an § 1782 ex parte application insofar as petitioner may "conduct discovery and a subpoena may be executed upon [r]espondent).

All four statutory requirements and each of the discretionary *Intel* factors are satisfied here.

## III.   Argument

### A.   The Application Meets the Statutory Requirements of 28 U.S.C. § 1782.

This Application easily meets Section 1782's *prima facie* statutory requirements. *See In re Schlich*, 893 F.3d at 46.

#### 1.   The Persons From Whom Discovery Is Sought Reside or May Be Found in This District.

The first requirement is met because Bengall, Dent, Hernández and Ramos reside in this District. Bengall resides at Calle Monte Cristo, No. 6, Urbanización Beverly Hills, Guaynabo, PR 00926. Dent resides at 1 Harbor Lights Drive, No. D1, Humacao, PR 00791. Hernández resides at Calle Tortuga 47, Urbanización Beverly Hills, Guaynabo, PR 00926. Ramos is the Interim Director of the Tasis School in Dorado, located at Urb. Sabanera, 11 Carr. 693, Dorado, PR 00646-3452.

14

The first requirement is met because all four discovery target resides or is found in the District of Puerto Rico within the meaning of 28 U.S.C. § 1782(a). *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

        2.      **The Discovery Is "for Use" in a Proceeding Before a Foreign Tribunal.**

The second prong is met because the Application seeks documents and testimony for use as evidence before a foreign tribunal. *See Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (document production and deposition testimony were undisputed forms of potential evidence satisfying the second requirement); *In re Porsche Auto. Holding SE*, 2019 WL 5806913, at *11 (D. Mass. Nov. 6, 2019), *aff'd*, 2021 WL 140638 (1st Cir. Jan. 15, 2021).

Dr. Kaila commenced a Hague Convention proceeding before the Ontario Superior Court of Justice—*Kaila v. Baker*, Court File No. FS-26-00001829-0000—seeking Seeta's return to Puerto Rico. This proceeding is pending and active. The Ontario Superior Court of Justice is a "foreign tribunal" within the meaning of § 1782. *See Intel*, 542 U.S. at 258. See also *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078 (2022) (holding that § 1782 applies to governmental or intergovernmental adjudicative bodies). Section 1782 requires only that a "dispositive ruling by the [tribunal] be within reasonable contemplation." *Id.* at 259. Here, the proceeding has been formally commenced and is pending before the Canadian Court, which will conduct an evidentiary hearing. *See also Bravo Express Corp. v. Total Petrochemicals & Refining USA, Inc.*, 613 F. App'x 319, 322–23 (5th Cir. 2015); *Mees v. Buiter*, 793 F.3d 291, 300–01 (2d Cir. 2015).

The discovery sought from Bengall, Dent, Hernández and Ramos is directly relevant to the Canadian proceeding. Their anticipated testimony concerns Baker's wrongful removal of Seeta from Puerto Rico in violation of three court orders, the circumstances surrounding that removal,

15

10315014

Bengall's extortion demand, and Dent's communications with Baker. These issues are central to Dr. Kaila's claims. *See In re Peruvian Sporting Goods S.A.C.*, 2018 WL 7047645, at *7 (discovery under § 1782 is governed by the Federal Rules, which "allow for liberal discovery of relevant information"). The Applicant has no reason to believe this evidence would be inadmissible in the Canadian proceeding or barred by any applicable law.

### 3. Dr. Kaila Is an "Interested Person."

The Supreme Court has construed "interested person" broadly, holding that it "plainly reaches beyond the universe of persons designated 'litigant.'" *Intel*, 542 U.S. at 256. The statute extends to any person who "possesses a reasonable interest in obtaining [judicial] assistance." *Id.* at 257. *See also In re Bracha Foundation*, 663 F. App'x 755, 763 (11th Cir. 2016); *Mees v. Buiter*, 793 F.3d 291, 295–96 (2d Cir. 2015).

Dr. Kaila far exceeds this threshold. He is the named applicant and left-behind parent in the pending Hague Convention proceeding. He filed the underlying Application with the U.S. Department of State on March 28, 2026, obtained Canadian court orders directing seizure of passports, and formally commenced the return proceeding on April 30, 2026. Dr. Kaila is a direct participant with the most fundamental interest imaginable: the return of his child. *See In re Tovmasyan*, 557 F. Supp. 3d 348, 353 (D.P.R. 2021); *Sandra Holding Ltd. v. Al Saleh*, 2019 WL 3072197, at *2 (D. Mass. July 15, 2019).

### 4. The Material Sought is Not Protected by any Legally Applicable Privilege.

The fourth statutory requirement provides that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a). This requirement does not impose a threshold burden on the applicant to disprove privilege as a precondition to discovery; rather, it operates as a

16

10315014

limitation on scope once authorized. *See Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) ("The statute's reference to privilege is best understood not as an additional requirement that a district court must assess prior to issuing a discovery order, but rather as a limitation akin to the limitations imposed by the Federal Rules of Civil Procedure on the scope of discovery."); *In re Premises Located at 840 140th Ave. NE*, 634 F.3d 557, 565–66 (9th Cir. 2011).

The Applicant affirmatively represents that the discovery sought does not implicate any recognized privilege. The materials sought from Bengall, Dent, Hernández and Ramos consist of factual communications, personal observations, security camera recordings, financial records, electronic records, and testimony concerning Baker's conduct, living arrangements, extortion demands, and removal of Seeta from Puerto Rico. Information from Ramos relates to Seeta's and Michelle Ann Baker's activities, interactions and records at Seeta's school, and this information is being requested by her custodial parent. None of this evidence falls within the attorney-client privilege, work-product doctrine, or other recognized evidentiary privilege.

With respect to Bengall, the discovery encompasses his communications with Baker, his voluntary statements to Dr. Kaila's attorney Robert Epstein (attested to in Mr. Epstein's sworn declaration), his admissions to Hernández regarding Baker's flight from Puerto Rico, and financial records relating to his $75,000,000 extortion demand. Communications in furtherance of a demand for payment, particularly one that may constitute extortion, are not privileged. *See In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005); *Clark v. United States*, 289 U.S. 1, 15 (1933).2005) (communications in furtherance of crime or fraud fall outside the protection of privilege). Moreover, Bengall is not party to any attorney-client relationship with the Applicant, and his voluntary statements to Mr. Epstein were made in his personal capacity. *See United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999).

17

10315014

With respect to Dent, the discovery consists of her communications with Baker, Bengall, and others concerning Baker's plans and departure from Puerto Rico, as well as the factual basis for her letter to the Guaynabo Municipal Court. Dent is not Baker's attorney, and her communications are not protected by any therapist-patient privilege because Dent voluntarily injected her observations and opinions into judicial proceedings by submitting her letter to the Court. *See In re Zuniga*, 714 F.2d 632, 640 (6th Cir. 1983); Fed. R. Evid. 501. To1983) (privilege may be waived where the holder voluntarily discloses the substance of the communication to third parties or in judicial proceedings). To the extent any communications relate to plans to remove Seeta from Puerto Rico in violation of a court order, such communications fall within the crime-fraud exception. *See In re Grand Jury Investigation*, 445 F.3d 266, 274 (3d Cir. 2006) (the crime-fraud exception applies where communications were made "in furtherance of" the contemplated crime or fraud); *Clark*, 289 U.S. at 15.

With respect to Hernández, the discovery consists of his personal observations, security camera recordings maintained by the Homeowners Association, and statements made to him by Bengall. None of these materials implicate any recognized privilege. Hernández's observations are based on personal knowledge as a resident and Association President. The security camera recordings are institutional records, not confidential communications. Bengall's voluntary admissions to Hernández are statements made outside any privileged relationship. *See In re Schlich*, 893 F.3d at 46.

With respect to Ramos, Dr. Kaila is the custodial parent, and the information he is seeking from her school relates to information to which he is entitled as the custodial parent. These are communications between his child and a school administrator, her efforts to attend class, any

18

10315014

communications by her to the school after she was abducted, and any communications by, or relating to, her abductor.  None of this information is privileged.

Bengall, Dent, Hernández and Ramos retain the full protections afforded by Fed. R. Civ. P. 45(d) and the Federal Rules of Civil Procedure. Should any specific document or testimony implicate a privilege, each respondent may assert that privilege in response to the subpoenas, and this Court retains jurisdiction to resolve any such disputes. *See In re Porsche Auto. Holding SE*, 2019 WL 5806913, at *33 (D. Mass. Nov. 6, 2019); *Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 262 n.7 (D. Mass. 2010) ("Once discovery is authorized under § 1782, the federal discovery rules . . . contain the relevant practices and procedures for the taking of testimony and the production of documents." (quoting *In re Clerici*, 481 F.3d 1324, 1336 (11th Cir. 2007))); *see also Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 262 n.7 (D. Mass. 2010) (noting that respondents retain "all rights to object" to specific discovery requests after a § 1782 order is entered).

Accordingly, the fourth statutory requirement is satisfied.

As clearly shown, this Application satisfies all statutory prerequisites to Section 1782 relief.

**B.    The Discretionary *Intel* Factors Weigh in Favor of Granting the Application.**

Once an applicant establishes the statutory elements of 28 U.S.C. § 1782, a court considers additional factors—the *Intel* factors—to determine whether to exercise its discretion. *See Intel Corp.*, 542 U.S. at 264; *In re Schlich*, 893 F.3d at 50. These factors are: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings, and the receptivity of foreign authorities to U.S. federal court assistance; (3) whether the request conceals an attempt to circumvent foreign proof-

19

gathering practices; and (4) whether the requests are unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65.

All four discretionary factors weigh strongly in favor of granting this Application.

### 1. Bengall, Dent Hernández and Ramos are Not Parties to the Canada Proceeding.

This factor is undisputed, as neither Bengall, Dent, Hernández nor Ramos is a party to the Canadian Hague Convention proceeding; each resides in Puerto Rico and is beyond the jurisdiction of the Ontario Superior Court of Justice. *See Intel*, 542 U.S. at 264. Without this Court's assistance, Dr. Kaila cannot obtain their testimony and documents for use in the Canadian proceeding. Bengall possesses information about his role harboring Baker and Seeta, his $75,000,000 demand, and his admissions regarding Baker's flight. Dent possesses communications with Baker and Bengall relevant to Baker's motives and plans. Hernández possesses both testimony and physical evidence—including security camera recordings—that is central to the Applicant's claims. This factor strongly favors granting the Application.

### 2. The Ontario Superior Court of Justice Is Receptive to U.S. Federal Court Assistance.

The Ontario Superior Court of Justice is a well-established court in a common-law jurisdiction closely aligned with the United States. Canada is a Hague Convention signatory, and there is no indication the Canadian court would be unreceptive to § 1782 discovery. The Hague Convention itself contemplates international cooperation for the return of wrongfully removed children, and the Canadian court will benefit from relevant Puerto Rico evidence. This factor favors granting the Application.

20

10315014

### 3.     The Applicant's Request is Not an Act of Circumvention.

The Applicant seeks discovery from Bengall, Dent, Hernández and Ramos, each of whom resides in Puerto Rico and is beyond the Ontario Superior Court's power to compel. The Applicant has turned to Section 1782 to obtain necessary evidence for his Canadian proceeding. The subpoenas are being served solely to assist Dr. Kaila in litigating his claims for Seeta's return. No Canadian judicial authority has rejected any effort by the Applicant to obtain this information. *See In re Mesa Power Group, LLC*, 878 F. Supp. 2d 1296, 1305 (S.D. Fla. 2012); *In re Application of Polygon Glob. Partners*, 2021 WL 1894733, at *5 (D.R.I. May 11, 2021).

Because Dr. Kaila seeks discovery in a good-faith effort to obtain evidence central to his claims, without evading any evidence-gathering restriction, this factor also favors granting the Application.

### 4.     The Discovery Sought is Specific, Narrow and not Unduly Burdensome.

The fourth *Intel* factor examines whether the request is "unduly intrusive or burdensome" through "the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015). The Court considers "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). The discovery sought is essential to the Canadian proceeding and remains inaccessible to Dr. Kaila.

The requests are narrowly tailored to Baker's wrongful removal of Seeta, Bengall's extortion demand, and communications bearing on Baker's motives and plans. Specifically, the requests seek: (1) communications and documents relating to Baker's removal of Seeta from Puerto Rico; (2) financial records relating to Bengall's extortion demand and Baker's unauthorized

21

10315014

financial transactions; (3) Dent's communications with Baker, Bengall, or anyone associated with Baker's departure; (4) security camera recordings and related evidence documenting Baker's movements; and (5) Ramos' and the Tasis Schools' interactions with Seeta after her abduction and any interactions with her abductor which may have facilitated the abduction. Each topic is directly relevant to the Canadian proceeding.

Granting the requested relief is not unfair to Bengall, Dent, Hernández or Ramos, each of whom may avail themselves of the protections of Fed. R. Civ. P. 45(d), including rules protecting proprietary or privileged information. *See In re Porsche Auto. Holding SE*, 2019 WL 5806913, at *33 (D. Mass. Nov. 6, 2019) ("Once discovery is authorized under § 1782, the federal discovery rules . . . contain the relevant practices and procedures for the taking of testimony and the production of documents." (quoting *In re Clerici*, 481 F.3d 1324, 1336 (11th Cir. 2007)).

In sum, each discretionary *Intel* factor favors granting the Application: Bengall, Dent, Hernández and Ramos are not parties to the Canadian proceeding; Canadian courts are receptive to U.S. discovery assistance; Dr. Kaila does not seek to circumvent any restrictions; and the discovery sought is neither unduly burdensome nor intrusive.

## IV.    Discovery Sought

The Applicant seeks documents and testimony from Bengall, Dent, Hernández and Ramos for use in the Canadian proceeding. This evidence has never been provided to the Applicant. The Applicant also requests expedited discovery. Specifically, the Applicant requests that depositions be permitted on no less than two weeks' notice from the date of entry of the order authorizing such discovery. The Canadian proceeding is actively pending, and the Hague Convention mandates that Contracting States "use the most expeditious procedures available" to secure the return of

22

10315014

wrongfully removed children, with courts directed to act within six weeks of commencement. Hague Convention, Art. 11.

The risk of spoliation is acute. Baker has demonstrated a willingness to defy multiple court orders, flee a jurisdiction, and engage in forgery and financial fraud. Bengall—who harbored Baker and Seeta, made the $75,000,000 extortion demand, and admitted Baker fled because of the court's order—has every incentive to destroy or conceal communications and financial records that would corroborate his involvement. Similarly, Dent—who submitted a letter to the Court on Baker's behalf and is believed to possess communications bearing on Baker's plans—may delete or withhold such communications if given advance notice. Electronic communications are inherently susceptible to deletion, and the passage of time increases the likelihood that evidence will be lost. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). Expedited discovery is necessary to preserve the integrity of the evidence and meet the Hague Convention's mandate of prompt resolution. *See Qureshi v. United States*, 600 F.3d 523, 526 (5th Cir. 2010). This Court has previously authorized discovery of comparable scope in § 1782 proceedings. *See In re Tovmasyan*, 557 F. Supp. 3d 348 (D.P.R. 2021) (granting *ex parte* application authorizing document and deposition subpoenas upon a Puerto Rico resident for use in an anticipated foreign proceeding, where the court found all statutory requirements and discretionary *Intel* factors satisfied); *see also In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery of Mushegh Tovmasyan*, Case No. 21-mc-353 (RAM) (D.P.R. July 27, 2021) (granting application authorizing subpoenas *duces tecum* and subpoenas *ad testificandum* encompassing documents, emails, communications, financial records, and deposition testimony from a nonparticipant witness residing in this District). The Applicant's requests here are, if anything, more narrowly tailored

23

10315014

than those approved in *Tovmasyan*, as they are limited to four identified witnesses with demonstrated, firsthand knowledge of the specific events at issue and are confined to categories of documents directly relevant to Baker's wrongful removal of Seeta Kaila.

The Applicant respectfully requests that this Court enter an Order authorizing the following discovery:

1. **Depositions**: The oral depositions of Colin S. Bengall, a/k/a Colin Bengall, a/k/a Colin Bengall-Smith, Jorge Hernández, Jeanne Carmichael Dent and Laura Ramos of the Tasis School in Dorado, at a time and place to be determined by the parties or, failing agreement, by this Court.

2. **Document Production from Bengall**: The production of all documents, correspondence, emails, text messages, SMS and MMS messages, WhatsApp messages, WhatsApp call logs, Signal messages, Telegram messages, Facebook Messenger communications, Instagram direct messages, social media posts and messages on any platform, voicemails, voice recordings, video recordings, photographs, phone records (including call detail records and subscriber information), bank records, credit card records, wire transfer records, financial statements, receipts, invoices, checks (including cancelled checks and images thereof), contracts, agreements, notes, memoranda, calendars, appointment books, travel records (including airline tickets, boarding passes, itineraries, and hotel reservations), and any other writings, recordings, or electronically stored information, in whatever form or medium, in Bengall's possession, custody, or control relating to: (a) Michelle Ann Baker; (b) Seeta Kaila; (c) Dr. Sanjeev Kaila; (d) Baker's residence at Bengall's home or any other location; (e) Baker's removal or planned removal of Seeta Kaila from Puerto Rico; (f) any financial transactions, payments, transfers, loans, gifts, or

24

10315014

demands for payment involving Dr. Kaila, Baker, Seeta Kaila, or any entity owned or controlled by Dr. Kaila; (g) any plans, preparations, arrangements, or communications concerning Baker's departure from Puerto Rico with Seeta Kaila; (h) any communications with Baker's attorneys, agents, or associates concerning Dr. Kaila, Seeta Kaila, custody, or the removal of Seeta Kaila from Puerto Rico (to the extent not protected by a legally applicable privilege); and (i) any communications with Jeanne Carmichael Dent, Jorge Hernández, or any other person concerning Baker, Seeta Kaila, Dr. Kaila, or the events described in this Application.

3. **Document Production from Dent**: The production of all documents, correspondence, emails, text messages, SMS and MMS messages, WhatsApp messages, WhatsApp call logs, Signal messages, Telegram messages, Facebook Messenger communications, Instagram direct messages, social media posts and messages on any platform, voicemails, voice recordings, video recordings, photographs, phone records (including call detail records and subscriber information), notes, memoranda, clinical or professional notes or records (to the extent not protected by a legally applicable privilege), calendars, appointment books, and any other writings, recordings, or electronically stored information, in whatever form or medium, in Dent's possession, custody, or control relating to: (a) Michelle Ann Baker; (b) Seeta Kaila; (c) Dr. Sanjeev Kaila; (d) Baker's removal or planned removal of Seeta Kaila from Puerto Rico; (e) any communications with Baker, Bengall, or any other person concerning Baker's relationship with Dr. Kaila, the custody of Seeta Kaila, Baker's living arrangements, or Baker's departure from Puerto Rico; (f) the letter submitted by Dent to the Guaynabo Municipal Court, including all drafts, communications, and materials relating to the preparation, content, or submission

25

of that letter; and (g) any communications with Baker's attorneys, agents, or associates concerning Dr. Kaila, Seeta Kaila, custody, or the events described in this Application (to the extent not protected by a legally applicable privilege).

4. **Document Production from Hernández**: The production of all documents, correspondence, emails, text messages, SMS and MMS messages, WhatsApp messages, WhatsApp call logs, Signal messages, Telegram messages, Facebook Messenger communications, Instagram direct messages, social media posts and messages on any platform, voicemails, voice recordings, video recordings, photographs, security camera recordings (including all footage from cameras maintained by or on behalf of the Homeowners Association of Urbanización Beverly Hills), access logs, gate logs, visitor logs, phone records (including call detail records and subscriber information), notes, memoranda, incident reports, meeting minutes, board communications, and any other writings, recordings, or electronically stored information, in whatever form or medium, in Hernández's possession, custody, or control (including in his capacity as President of the Homeowners Association of Urbanización Beverly Hills) relating to: (a) Colin S. Bengall; (b) Michelle Ann Baker; (c) Seeta Kaila; (d) Dr. Sanjeev Kaila; (e) Baker's residence at or visits to Bengall's home or any other location within Urbanización Beverly Hills; (f) Baker's movements within or through Urbanización Beverly Hills; (g) Baker's removal or planned removal of Seeta Kaila from Puerto Rico; and (h) any communications with Bengall, Baker, Dr. Kaila, or any other person concerning Baker, Seeta Kaila, or the events described in this Application.

5. **Document Production from Laura Ramos of the Tasis School in Dorado**: The production of any and all documents, reports, electronic records, correspondence, notes,

26

10315014

memorandums, communications, voice mails, text messages, computer login logs, and/or emails by, from, to, with or relating to Michelle Ann Baker, Sanjeev Kaila, and/or Seeta Kaila from January 1, 2025 through the present, including but not limited to: Seeta Kaila's attendance at school and her attempts to attend school in Puerto Rico; information on abuse allegations Michelle Ann Baker or any third party may have made about Sanjeev Kaila; and, information or contacts relating to Seeta Kaila's registration in school other than Tasis in Dorado.

6. **Document Production from Third Parties**: To the extent that the depositions and document production from Bengall, Dent, Hernández and Ramos reveal the existence of relevant documents or electronically stored information in the possession, custody, or control of identifiable third parties, the Applicant respectfully requests authorization to serve subpoenas *duces tecum* upon such third parties for records directly relating to the subject matter of this Application. By way of illustration and not limitation, the Applicant anticipates that such third-party discovery may include: (a) bank records, account statements, transaction histories, wire transfer records, credit card records, debit card records, cancelled checks, and account opening documentation from financial institutions—including Truist Bank (Atlanta, Georgia), Coastal States Bank (Hilton Head, South Carolina), and any financial institution at which Bengall or Baker maintains or has maintained accounts—relating to financial transactions, transfers, or demands for payment involving Dr. Kaila, Baker, Seeta Kaila, Bengall, SAK Management, LLC, or Center for Surgical Arts, Inc.; (b) phone records, call detail records, cell site location information, subscriber information, and text message records from telecommunications providers servicing telephone numbers associated with Bengall, Dent, Baker, or Hernández, to the

27

10315014

extent such records bear on communications relating to Baker's removal of Seeta Kaila from Puerto Rico or the events described herein; and (c) account records, message content (to the extent available by lawful process), and metadata from social media platforms and internet-based communications providers—including but not limited to WhatsApp (Meta Platforms, Inc.), Signal, Telegram, Facebook, and Instagram—relating to accounts maintained by Bengall, Dent, or Baker, to the extent such records bear on the subject matter of this Application. The Applicant acknowledges that service of any third-party subpoena will comply with all applicable provisions of Fed. R. Civ. P. 45, and that any such third party will retain the right to move to quash or modify under Rule 45(d). To the extent additional third parties are identified whose records are relevant to the matters at issue, Applicant reserves the right to seek further authorization from this Court upon a showing of relevance and need.

## V.    Conclusion

For the foregoing reasons, Applicant Dr. Sanjeev Kaila respectfully requests that the Court grant this Application in its entirety and enter an Order pursuant to 28 U.S.C. § 1782(a): (a) Granting the Application in its entirety; (b) Authorizing the oral depositions of Colin S. Bengall, Jeanne Carmichael Dent, Jorge Hernández and Laura Ramos of the Tasis School; (c) Directing Bengall, Dent, Hernández and Ramos to produce the documents and electronically stored information described herein; (d) Authorizing the issuance of subpoenas *ad testificandum* and subpoenas *duces tecum* to Bengall, Dent, Hernández, Ramos, and such other third parties as may be identified; (e) Authorizing expedited discovery on the ground that the Canadian Hague Convention proceeding is actively pending, the Hague Convention mandates "the most expeditious procedures available" for the return of wrongfully removed children (Art. 11), and there exists a

28

10315014

substantial risk that relevant electronic communications and financial records may be destroyed absent prompt judicial intervention; and (f) Granting such other and further relief as this Court deems just and proper.

**WHEREFORE**, Applicant respectfully requests that the Court grant this Application and any further relief as it deems just and proper.

On this 3ʳᵈ day of June 2026.

Respectfully submitted,

Francisco E. Colón-Ramírez, Esq.
Bar No.: 210510
E-mail: fecolon@colonramirez.com
**COLÓN RAMÍREZ LLC**
PO Box 361920
San Juan, PR 00936-1920
Tel.: (888) 223-2364
Fax: (787) 425-4731

&

William J. Hughes, Jr., Esq.
Bar No.: 310103
E-Mail: wjhughes@pbnlaw.com
**PORZIO BROMBERG & NEWMAN, P.C.**
17 E. 8th Street
Ocean City, NJ 08226
973-889-4308

Gabriela Dávila Micheo, Esq.
Bar No.: 232008
E-mail: gmdavilamicheo@pbnlaw.com
**PORZIO BROMBERG & NEWMAN (PR) LLC**
174 de Diego Avenue
San Juan, PR 00927
939-475-1733

10315014